**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

---

| | |
|---|---|
| LEXI LEIGH ZARFATI, MICHELLE WILLIAMS, JORDANA MORRIS, MARIA ANGELICA NAVAS, and GRANT WEST, on behalf of themselves and all others similarly situated, | CLASS ACTION |
| | CASE NO. |
|       Plaintiffs, | JURY TRIAL DEMANDED |
| v. | |
| ARTSANA USA, INC., | |
|       Defendant. | |

---

# CLASS ACTION COMPLAINT

Plaintiffs, LEXI LEIGH ZARFATI, MICHELLE WILLIAMS, JORDANA MORRIS, MARIA ANGELICA NAVAS, and GRANT WEST (together, "Plaintiffs"), bring this Complaint individually and on behalf of all others similarly situated, against ARTSANA USA, INC. for manufacturing, marketing, and distributing defective and dangerous Chicco-brand strollers and allege as follows:

## INTRODUCTION

1.     This is a proposed class action lawsuit brought on behalf of the Plaintiffs and others like them who purchased baby strollers from Artsana USA, Inc. ("Artsana").

2.     Artsana manufactures, markets, and distributes various models of baby strollers in the United States, including in Florida.

3.     Artsana represents these baby strollers to consumers as safe, including by representing to consumers that the strollers have an effective braking mechanism.

4.     In fact, several models of these strollers have a defective braking mechanism that allows the strollers to roll even when the user engages the brakes.

5.     This defective braking mechanism can lead to children being seriously injured or killed and, in fact, has already led to at least one child being seriously injured.

6.     Artsana's misrepresentations about the efficacy of the braking mechanism and their omissions about the mechanism were unfair and deceived consumers, who paid for a product with a serious, undisclosed defect that rendered the product less valuable.

**PARTIES**

7.     Plaintiff Lexi Leigh Zarfati is and at all material times was a resident and citizen of Broward County, Florida.

8.     Plaintiff Michelle Williams is and at all material times was a resident and citizen of Palm Beach County, Florida.

9.     Plaintiff Jordana Morris is and at all material times was a resident and citizen of Broward County, Florida.

10.     Plaintiff Maria Angelica Navas is and at all material times was a resident and citizen of Miami-Dade County, Florida.

11.     Plaintiff Grant West is and at all material times was a resident and citizen of Palm Beach County, Florida.

12.     Defendant Artsana USA, Inc. is a New Jersey corporation with its principal place of business in Lancaster, Pennsylvania. Defendant Artsana is a wholly-owned subsidiary of the global corporation Artsana S.p.A.

## JURISDICTION & VENUE

**A. Subject Matter Jurisdiction**

13.     This Court has original diversity jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA").

14.     The matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, at least one member in each of the proposed plaintiff classes is a citizen of a State different from Artsana, and the number of members of all proposed plaintiff classes in the aggregate is not less than 100. 28 U.S.C. § 1332(d)(2).

**B. Personal Jurisdiction**

15.     This Court has personal jurisdiction over Artsana because this is a civil action arising from Artsana operating, conducting, engaging in, or carrying on a business or business venture in this state.

16.     Specifically, Artsana is engaged in the advertising and marketing and sale of its Chicco Bravo brand strollers in Florida. On its website, Artsana represents that it sells its Chicco products in approximately 200 stores throughout Florida and features a function that allows Florida consumers to search for the most conveniently located store. Fed. R. Civ. P. 4(k)(1)(a) & Fla. Stat. § 48.193(1)(a) (2023).

17.     This Court also has personal jurisdiction over Artsana because this is a civil action arising from Artsana committing a tortious act within this state. Fed. R. Civ. P. 4(k)(1)(a) & Fla. Stat. § 48.193(1)(a) (2023).

**C. Venue**

18.     Venue is proper in this district because a substantial part of the events and omissions giving rise to the claim occurred in this district. 28 U.S.C. § 1391(b).

## CONDITIONS PRECEDENT

19.     All conditions precedent to this action have occurred or been performed.

## FACTUAL BACKGROUND

### A.  Artsana's Products and Marketing

20.     Artsana manufactures, markets, and distributes various products for infants and children under the Chicco brand throughout Florida and the United States, including the strollers at issue in this action.

21.     Chicco, pronounced "Kee-ko," is an established brand in children's products.  It was founded in 1958 by an Italian inventor and developer of pharmaceutical devices, and today Chicco is a global brand with a presence in 120 countries.

22.     Under the brand Chicco, Artsana offers for sale everything from baby gear to nursing products, toys, apparel, shoes, and baby care products.

23.     Artsana knows that its Chicco customers care very much about safety, acknowledging on its website that "child safety is paramount on your list of concerns."  So, it markets to its customers accordingly. Artsana claims "Chicco products are engineered for safety" and that its "products help ensure the safety of child occupants and/or complement efforts by caregivers to safely care for children."

24.     Chicco also tells customers on its website that it "takes seriously the responsibility for designing juvenile products that are intuitive and easy to use."

25.     Chicco products are touted as providing "innovative, quality products designed to enhance your life."

26.     Through its advertising and marketing, Artsana presents Chicco as a reliable, trusted provider of high-quality products:





**B. Artsana's Stroller Line and the Defective Strollers**

27. Among its Chicco products, Artsana designs, manufactures, and sells dozens of "premium-quality Chicco strollers," that it touts as offering the "perfect ride for your little one." It markets these products as thoughtfully designed—"engineered to keep up with your busy lifestyle with convenient features to make every ride simple and smooth."

28. Artsana offers four categories of Chicco strollers: full size, lightweight, jogging, double and frame strollers. As to each of these categories, there are several different Chicco models offered.

29.     On its website, Artsana encourages consumers to browse the various model types by using the "stroller comparison chart to discover the perfect fit for your family." Artsana further instructs consumers to "make sure your baby is safe and comfortable, by choosing the right stroller for their needs."

30.     Artsana's Chicco strollers range in price from approximately $110 to $600.

## C. The Design and Defect of the Chicco Bravo Strollers

31.     Several models of the Chicco strollers, specifically identified below, are equipped with rear foot brakes, specifically, brake lock levers, located on each side of the rear wheel.

32.     Chicco represents to consumers that these strollers have brakes.

33.     Chicco makes the braking mechanism on these strollers sound foolproof.  It explains that the "[r]ear-linked foot brakes secure the stroller with a simple tap," and describes the braking mechanism as "One-touch, linked rear brakes for parking."

34.     In the owner's manuals for these strollers, which are available on Artsana's website, Chicco further directs parents to simply "[p]ush down on the Brake Lock Levers located on each side of the Rear Wheel assembly[,] to lock the Rear Wheels."

35.     Artsana provides an owner's manual, along with other paperwork, to each consumer upon purchase of any stroller and these manuals are also available online.

36.     Contrary to Artsana's representations, however, the brake lock levers in certain Chicco strollers are faulty and fail to hold the stroller in the lock position.  This defect is present in the Chicco brand Bravo LE, Bravo LE ClearTex, BravoFor2, BravoFor2 LE, Bravo Quick-Fold, Bravo Primo, Corso LE, and Corso Primo (the "defective strollers" or "strollers").

37.     Specifically, in the defective strollers, there are two brake lock levers, one on each rear wheel, each of which activates a pawl that engages with a sprocket on the respective wheel.

When the levers are depressed, the pawl is supposed to engage the sprocket between its cogs and prevent the wheel from turning, but there is a critical design flaw.

38. On the defective strollers, the two brake lock levers (and their pawls) are linked such that each must move up and down simultaneously (*e.g.,* if one depresses or raises the right lever, the left also goes down or up), ***but*** the two sprockets rotate independently from each other. As a result, if the cogs of the two sprockets happen to be counter-aligned, neither pawl will lock its sprocket because when one should fall between the cogs of its respective sprocket, it will be prevented and raised by the action of the other linked pawl being lifted by the counter-aligned cog of its respective sprocket (and so on as the wheels continue to roll). What is worse, this failure can occur even if the brake lock levers are locked in the down position, leaving the user with the false impression that the brake is correctly engaged. Thus, as designed the braking mechanism is defective and highly dangerous.

39. In its owner's manual, and other written advertising and marketing materials, Chicco omits any explanation of the hazard presented by the defective braking mechanism and fails to include any adequate warning.

40. Not all the Chicco strollers feature this brake defect, nor even all the Bravo model line strollers. For example, the Mini Bravo Plus stroller features a braking mechanism with independent brake levers (and pawls).

41. Artsana knew and should have known that the braking mechanism on the defective strollers was faulty, unreliable, and dangerous.

42. As far back as April of 2018, a person posted on a retailer's website that the Bravo LE Stroller's "brack lock . . . doesn't catch much of the time, and when it does, it often releases

on its own. I do not feel safe using this stroller, unless I constantly have a hand or foot on it . . . wheel lock needs a redesign."

43.    A note following this post reads, "This product review was collected by the manufacturer."

44.    And, in August 2019, a website dedicated to "in depth baby product reviews," www.babygearlab.com, noted the problem with the braking mechanism. In reviewing the Bravo LE Stroller, the author wrote:

> The brakes are single action and easy to set, average to release, and sandal foot-friendly. We were able to get the brake to skip across the cogs of the wheel without locking into place, which means parents might think they have set the brakes when they haven't. In testing, we also had the brakes release themselves at different points with weight in the stroller.

45.    Moreover, at least one of the defective stroller models, the Bravo LE ClearTex Stroller, has already caused physical injury because of its defective braking mechanism.

46.    Specifically, a child was injured when, within seconds, his Bravo stroller rolled off the front porch of his family home and down several steps.  The boy suffered injuries to his head. One of the boy's parents had engaged the stroller's brake with his foot and believed the braking mechanism was secure.  Due to the defect alleged above, the brake was not secure, the stroller was not locked, and the boy was seriously injured.

47.    The defective braking mechanism makes the strollers worth less than what the Plaintiffs paid for them. The brakes on a stroller are an essential feature of any stroller, as it prevents the stroller from rolling and, thereby, risking injury. A stroller with a defective braking mechanism is worth less than one with a working braking mechanism.

## PLAINTIFF SPECIFIC ALLEGATIONS

### Lexi Leigh Zarfati

48.    On November 24, 2023, Plaintiff Lexi Leigh Zarfati purchased her Corso LE stroller from the Chicco website for $479.

49.    At the time of purchase, Zarfati was expecting her first child.

50.    The stroller came in a box and included the standard paperwork that accompanies the sale of Corso LE strollers.

51.    Artsana represented to Zarfati that the stroller had brakes.

52.    Artsana further represented that the braking mechanism of the Corso LE stroller would keep the wheels secure when, in fact, it was defective and fails to do so.

53.    Artsana failed to disclose to Zarfati that the braking mechanism of the Corso LE stroller was defective.

54.    Artsana's representations and omissions were likely to deceive a reasonable person in Zarfati's position who was purchasing a stroller because they would leave her with the mistaken impression that the braking mechanism was not defective and would function safely and reliably.

55.    If Artsana had truthfully represented the nature of the braking mechanism and disclosed the existence of the defect, a reasonable person in Zarfati's position would not have purchased the stroller.

56.    Due to the existence of the defect, Zarfati's stroller is worth less than what she paid for it.

57.    The defect in Zarfati's Corso LE stroller is materially identical to the defect in the other stroller models identified in paragraph 36.

**Michelle Williams**

58.     On February 17, 2023, Plaintiff Michelle Williams purchased her Bravo 3-in-1 Quick-Fold Travel System stroller from the retailer Target for $269.99.

59.     The stroller came in a box and included the standard paperwork that accompanies the sale of Bravo 3-in-1 Quick-Fold Travel System strollers.

60.     Artsana represented to Williams that the stroller had brakes.

61.     Artsana further represented that the braking mechanism of the Bravo 3-in-1 Quick-Fold Travel System stroller would keep the wheels secure when, in fact, it was defective and fails to do so.

62.     Artsana failed to disclose to Williams that the braking mechanism of the Bravo 3-in-1 Quick-Fold Travel System stroller was defective.

63.     Artsana's representations and omissions were likely to deceive a reasonable person in Williams's position who was purchasing a stroller because they would leave her with the mistaken impression that the braking mechanism was not defective and would function safely and reliably.

64.     If Artsana had truthfully represented the nature of the braking mechanism and disclosed the existence of the defect, a reasonable person in Williams's position would not have purchased the stroller.

65.     Due to the existence of the defect, Williams's stroller is worth less than what she paid for it.

66.     The defect in Williams's Bravo 3-in-1 Quick-Fold Travel System stroller is materially identical to the defect in the other stroller models identified in paragraph 36.

**Jordana Morris**

67.  On February 18, 2023, Plaintiff Jordana Morris purchased her Corso Primo ClearTex Travel System stroller from BuyBuyBaby for $419.99

68.  The stroller came in a box and included the standard paperwork that accompanies the sale of Corso Primo strollers.

69.  Artsana represented to Morris that the stroller had brakes.

70.  Artsana further represented that the braking mechanism of the Corso Primo stroller would keep the wheels secure when, in fact, it was defective and fails to do so.

71.  Artsana failed to disclose to Morris that the braking mechanism of the Corso Primo stroller was defective.

72.  Artsana's representations and omissions were likely to deceive a reasonable person in Morris's position who was purchasing a stroller because they would leave her with the mistaken impression that the braking mechanism was not defective and would function safely and reliably.

73.  If Artsana had truthfully represented the nature of the braking mechanism and disclosed the existence of the defect, a reasonable person in Morris's position would not have purchased the stroller.

74.  Due to the existence of the defect, Morris's stroller is worth less than what she paid for it.

75.  The defect in Morris's Corso Primo stroller is materially identical to the defect in the other stroller models identified in paragraph 36.

**Maria Angelica Navas**

76.  On July 27, 2023, Plaintiff Maria Angelica Navas purchased her BravoFor2 LE stroller from the Amazon website for $92.40.

77.     The stroller came in a box and included the standard paperwork that accompanies the sale of BravoFor2 LE strollers.

78.     Artsana represented to Navas that the stroller had brakes.

79.     Artsana further represented that the braking mechanism of the BravoFor2 LE stroller would keep the wheels secure when, in fact, it was defective and fails to do so.

80.     Artsana failed to disclose to Navas that the braking mechanism of the BravoFor2 LE stroller was defective.

81.     Artsana's representations and omissions were likely to deceive a reasonable person in Navas's position who was purchasing a stroller because they would leave her with the mistaken impression that the braking mechanism was not defective and would function safely and reliably.

82.     If Artsana had truthfully represented the nature of the braking mechanism and disclosed the existence of the defect, a reasonable person in Navas's position would not have purchased the stroller.

83.     Due to the existence of the defect, Navas's stroller is worth less than she paid for it.

84.     The defect in Navas's BravoFor2 LE stroller is materially identical to the defect in the other stroller models identified in paragraph 36.

**<u>Grant West</u>**

85.     On February 18, 2024, Plaintiff Grant West purchased his Corso Primo ClearTex Travel System stroller from Bed Bath & Beyond for $599.99.

86.     The stroller came in a box and included the standard paperwork that accompanies the sale of Corso Primo strollers.

87.     Artsana represented to West that the stroller had brakes.

88.     Artsana further represented that the braking mechanism of the Corso Primo stroller would keep the wheels secure when, in fact, it was defective and fails to do so.

89.     Artsana failed to disclose to West that the braking mechanism of the Corso Primo stroller was defective.

90.     Artsana's representations and omissions were likely to deceive a reasonable person in West's position who was purchasing a stroller because they would leave him with the mistaken impression that the braking mechanism was not defective and would function safely and reliably.

91.     If Artsana had truthfully represented the nature of the braking mechanism and disclosed the existence of the defect, a reasonable person in West's position would not have purchased the stroller.

92.     Due to the existence of the defect, West's stroller is worth less than he paid for it.

93.     The defect in West's Corso Primo stroller is materially identical to the defect in the other stroller models identified in paragraph 36.

## CLASS ACTION ALLEGATIONS

94.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23.

Class Definition

95.     Plaintiffs seek to represent the following Nationwide Class:

Class

All persons and entities who purchased a Chicco brand Bravo LE, Bravo LE ClearTex, BravoFor2, BravoFor2 LE, Bravo Quick-Fold, Bravo Primo, Corso LE, and Corso Primo stroller within the United States within the applicable limitations period (the "Class Period").

Excluded from this class are Artsana, its affiliates, subsidiaries, agents, board members, directors, officers, and/or employees and the Judge to whom the action is assigned and any member of the Judge's staff and immediate family.

96.     Plaintiffs seek to represent the following Florida Class:

All persons and entities who purchased a Chicco brand Bravo LE, Bravo LE
ClearTex, BravoFor2, BravoFor2 LE, Bravo Quick-Fold, Bravo Primo, Corso LE,
and Corso Primo stroller within Florida within the applicable limitations period (the
"Florida Class Period").

Excluded from this class are Artsana, its affiliates, subsidiaries, agents, board
members, directors, officers, and/or employees and the Judge to whom the action
is assigned and any member of the Judge's staff and immediate family.

97.     Plaintiffs will additionally seek to certify statewide class action claims on behalf of

sub-classes in the following states, all with consumer-protection statutes materially identical to

Florida's consumer-protection statute: Alaska, California, Connecticut, Colorado, D.C., Delaware,

Hawaii, Idaho, Illinois, Iowa, Kentucky, Massachusetts, Michigan, Minnesota, Missouri, New

Hampshire, New Jersey, New Mexico, New York, North Dakota, Ohio, Rhode Island, Tennessee,

Washington, and Wisconsin.

98.     Each of the State Classes is initially defined as:

All persons or entities who purchased a Chicco brand Bravo LE, Bravo LE
ClearTex, BravoFor2, BravoFor2 LE, Bravo Quick-Fold, Bravo Primo, Corso LE,
and Corso Primo stroller within the state of _____ (*e.g.*, Alaska) within the
applicable limitations period (the "_____ Class Period").

Excluded from this class are Artsana, its affiliates, subsidiaries, agents, board
members, directors, officers, and/or employees and the Judge to whom the action
is assigned and any member of the Judge's staff and immediate family.

99.     The proposed Nationwide and Florida Classes and their members are sometimes

referred to as the "classes."

100.    Plaintiffs reserve the right to amend the definition of the classes if discovery and

further investigation reveal that the classes should be expanded or otherwise modified.

101.    Plaintiffs reserve the right to establish sub-classes as appropriate.

102.    The action may be maintained as a class action because it meets all the requirements of Rule 23(a) and (b).

**A.  Requirements of Federal Rule of Civil Procedure 23(a)**

103.    The action satisfies all the requirements of Rule 23(a).

**1. Numerosity**

104.    The Nationwide and Florida Class members are so numerous that joinder of all members is impracticable. On its website, Artsana represents that it sells its Chicco products in approximately 3,277 stores nationwide and in 200 stores throughout Florida.

105.    In 2024 alone, the baby stroller market size in the United States is estimated at 4.54 billion dollars.

106.    The exact number of Florida Class members, as well as Nationwide Class members, including the class members' names and addresses, can be identified from Artsana's business records.

**2.  Commonality**

107.    Common questions of law and fact exist as to Plaintiffs', the Nationwide Class members', and the Florida Class members' claims. These common questions include, but are not limited to, the following:

a.  Whether Artsana engaged in a deceptive and unfair trade practice by its affirmative representations (and its omissions) regarding the efficacy of the braking mechanism of the strollers;

b.  Whether Artsana's representations and omissions were likely to deceive a reasonable person who was purchasing a stroller because they would leave him or her with the

mistaken impression that the braking mechanism was not defective and would function safely and reliably;

c.   Whether, if Artsana had truthfully represented the nature of the braking mechanism and disclosed the existence of the defect, a reasonable person would not have purchased the stroller;

d.   Whether, because of the nature of the braking mechanism, the strollers are worth less than what consumers paid for them;

e.   Whether and to what extent Artsana's conduct injured the Plaintiffs, Nationwide Class members, and Florida Class members;

f.   Whether Artsana unlawfully enriched itself at the expense of the Plaintiffs, Nationwide Class members, and Florida Class members; and

g.   Whether the braking mechanism of the strollers complied with the requirements of ASTM-F833-21;

h.   Whether Artsana's conduct violated Florida's Deceptive and Unfair Trade Practices Act; and

i.   Whether Artsana's conduct violated 15 USC § 2072.

### 3.  Typicality

108.   Plaintiffs' claims are typical of the Nationwide Class members' and the Florida Class members' claims because of the uniformity and common purpose of Artsana's unlawful conduct. Plaintiffs, like all Class members, were damaged through their purchase of strollers with a defective, materially identical braking mechanism.

109.   Each Nationwide and Florida Class member has sustained, and will continue to sustain, damages in the same manner as Plaintiffs as a result of Artsana's unlawful conduct.

### 4. Adequacy

110.    Plaintiffs will fairly and adequately represent the interests of the members of the classes because they have suffered the same wrongs as the members of the classes. Plaintiffs do not have claims that are unique to Plaintiffs and not the other class members, nor are there defenses unique to Plaintiffs that could undermine the efficient resolution of the claims of the classes.

111.    Plaintiffs are fully cognizant of their responsibilities as class representatives and have retained Maderal Byrne & Furst to prosecute this case. Maderal Byrne & Furst are experienced in complex class action litigation, including litigation related to unfair and deceptive trade practices and have the financial and legal resources to meet the costs of, and understand the legal issues associated with, this type of litigation.

### C. Requirements of Federal Rule of Civil Procedure 23(b)(3)

112.    This action satisfies all the requirements of Rule 23(b)(3).

113.    The questions of law and fact enumerated above predominate over questions affecting only individual members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Among other things:

a.  The Nationwide and Florida Class members' interests in individually controlling the prosecution or defense of separate actions is very low because of the extensive time and considerable expense necessary to conduct such litigation as well as the relatively small amount of damages sought by each individual class member;

b.  The extent and nature of any litigation concerning the controversy already begun by or against class members is non-existent in that there are no active lawsuits of which the undersigned is aware that are asserting economic damages based on misrepresentations (or omissions) about the defective braking mechanism in the strollers;

c. The desirability of concentrating the litigation of the claims in this particular forum is high, given the Florida Class at issue; and

d. Plaintiffs know of no difficultly to be encountered in the management of this action that would preclude its maintenance as a class action.

## COUNT 1
## VIOLATION OF FLORIDA'S UNFAIR & DECEPTIVE TRADE PRACTICES ACT
### (On behalf of the Florida Class)

114. Plaintiffs re-allege and incorporate by reference all allegations preceding Count 1 as though fully set forth herein.

115. This Count is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

116. At all times material, Plaintiffs and the Florida Class members were "consumers" within the meaning of Fla. Stat. § 501.203(7).

117. At all times material, Artsana conducted trade and commerce within the meaning of Fla. Stat. § 501.203(8).

118. By the acts and conduct alleged herein, Artsana has committed unfair and deceptive acts and practices by making false representations and omissions on its website, in the advertising of the defective strollers, and in the owner's manuals for the strollers, which acts and practices were directed at consumers.

119. In terms of false representations, Artsana represented to Plaintiffs and the Florida Class members that the braking mechanism in the strollers would keep the wheels secure when, in fact, it was defective and fails to do so.

120. In fact, representing that the strollers had brakes at all was false because such a representation necessarily implies working brakes.

18

121. In terms of omissions, Artsana failed to disclose to consumers in any form—whether through advertising and marketing materials, via its website, direct mail, in owner's manuals, or the like—that the strollers had a defective braking mechanism.

122. Separately, Artsana had a duty to disclose the defective braking mechanism. Artsana had this duty because:

a. The defect was a latent defect;

b. the defect was serious, life threatening, and likely to cause significant bodily harm;

c. Artsana knew about the defect;

d. Plaintiffs and the Florida Class members are unsophisticated, did not have access to the same information as Artsana, and did not know about the defect; and

e. Artsana affirmatively represented that the strollers had brakes.

123. Separately and alternatively, Artsana's acts and practices were unfair because they were immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

124. Specifically, Artsana:

a. knew that the strollers were being used by a particularly vulnerable group of people, namely, babies and young children;

b. knew that parents would naturally assume that the braking mechanism on the strollers worked;

c. knew that the braking mechanism on the strollers did not, in fact, work; and

d. knew that the cost of manufacturing a stroller with a working braking mechanism was minimal and, in fact, had manufactured other strollers with working braking mechanisms.

125.    The unfair and deceptive acts and practices alleged above occurred in connection with Artsana's trade and commerce in Florida, including through Artsana's advertising, soliciting, providing, offering, and distributing, whether by sale, rental, or otherwise, of strollers.

126.    Artsana's unfair and deceptive acts and practices were likely to deceive objective reasonable consumers.

127.    Artsana's unfair and deceptive practices—the alleged misrepresentations and omissions—were material because they concerned a matter to which a reasonable person would attach importance in making his or her decision to purchase the strollers, namely, the safety of the strollers.

128.    Had Artsana not misrepresented the efficacy of the braking mechanism and actually disclosed that the braking mechanism was defective, objective reasonable consumers would not have purchased the strollers.

129.    Arstana's unfair and deceptive acts and practices resulted in Plaintiffs and Florida Class members paying more for the strollers than what the strollers were actually worth.

130.    As a direct and proximate result of Artsana's FDUTPA violations, Plaintiffs and Florida Class members have been damaged in an amount to be proven at trial.

131.    At some future date and time, Plaintiffs and Florida Class members will seek court approval to assert consumer-protection claims on behalf of class members from other states that have consumer-protection statutes materially identical to FDUTPA. Specifically, they will seek approval to assert claims on behalf of class members from the following states:

    a.  Alaska;

    b.  California;

    c.  Colorado;

d. Connecticut;

e. D.C.;

f. Delaware;

g. Hawaii;

h. Idaho;

i. Illinois;

j. Iowa;

k. Kentucky;

l. Massachusetts;

m. Michigan;

n. Minnesota;

o. Missouri;

p. New Hampshire;

q. New Jersey;

r. New Mexico;

s. New York;

t. North Dakota;

u. Ohio;

v. Rhode Island;

w. Tennessee;

x. Washington; and

y. Wisconsin

132.    Plaintiffs and Florida Class members are entitled to actual damages, declaratory and injunctive relief, attorneys' fees and costs, and all other remedies available under FDUTPA.

WHEREFORE, Plaintiffs, on behalf of themselves and all similarly situated Florida Class members, respectfully demand judgment against Artsana for actual damages, plus attorneys' fees and costs, and any other relief to which they are entitled.

## COUNT 2
## UNJUST ENRICHMENT
### (On behalf of the Nationwide Class)

133.    Plaintiffs re-allege and incorporate by reference all allegations preceding Count 1 as though fully set forth herein.

134.    Plaintiffs and Nationwide Class members conferred a benefit on Artsana through their payment for the strollers, allowing Artsana to enrich itself to the detriment of the class.

135.    Artsana voluntarily accepted and retained the benefit.

136.    Under the circumstances, it would be inequitable for Artsana to retain the benefit, as it was obtained unlawfully through unfair and deceptive practices.

137.    Plaintiffs and Nationwide Class members suffered damages as a result of Artsana's misconduct.

WHEREFORE, Plaintiffs, on behalf of themselves and all similarly situated Nationwide Class members, respectfully demand judgment against Artsana for actual damages and any other relief to which they are entitled.

## COUNT 3
## CONSUMER PRODUCT SAFETY ACT—15 U.S.C. § 2072
### (On behalf of the Nationwide Class)

138.    Plaintiffs re-allege and incorporate by reference the allegations preceding Count 1 as though fully set forth herein.

139.    This Count is brought pursuant to Title 15, United States Code, Section 2072.

140.    Artsana manufactured, distributed, and/or sold the defective strollers.

141.    The defective strollers were a consumer product subject to the Consumer Product Safety Act.

142.    Any person who sustains an injury by reason of any knowing violation of a consumer product safety rule is entitled to recover damages and the costs of suit.

143.    16 C.F.R. § 1227.2 is a safety rule that requires that strollers "comply with all applicable provisions of ASTM F833–21, Standard Consumer Safety Performance Specification for Carriages and Strollers, approved June 15, 2021."

144.    The defective strollers braking mechanism did not comply with the requirements of ASTM-F833-21, set out in Section 6.1, in that it does not prevent the wheels from rotating.

145.    The defective design of the braking mechanism was a substantial factor in causing injury to Plaintiffs and Nationwide Class members.

146.    By virtue of having received complaints from consumers regarding the defective mechanism in the defective strollers, Artsana knew that the strollers violated the applicable standards.

147.    As a direct and proximate result of the strollers' defective design, which does not comply with the Consumer Product Safety Act provisions and related federal rules, Plaintiffs and the Nationwide Class members have suffered damages.

WHEREFORE, Plaintiffs, on behalf of themselves and all similarly situated Nationwide Class members, respectfully demand judgment against Artsana for actual damages and any other relief to which they are entitled.

## PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves, the Nationwide Class, the Florida Class, and state sub-classes, request the following relief:

a. Certification of the Nationwide Class and the Florida Class;

b. Certification of state sub-classes;

c. Appointment of Plaintiffs as class representatives and Plaintiffs' counsel as class counsel;

d. A jury trial and judgment against Defendant Artsana;

e. A declaration and an order requiring that Artsana make full and accurate disclosure regarding the risks associated with the braking mechanism on its strollers;

f. The costs of suit, including reasonable attorneys' fees, in accordance with FDUTPA;

g. The costs of suit, including reasonable attorneys' fees and reasonable expert witnesses' fees in accordance with 15 U.S.C. § 2072;

h. General, actual, and compensatory damages in an amount to be determined at trial;

i. Pre-judgment and post-judgment interest at the maximum rate permitted by applicable law; and

j. Such other relief to which the Court deems the Plaintiffs entitled.

## DEMAND FOR JURY TRIAL

Plaintiffs request a jury trial for any and all Counts for which a trial by jury is permitted by law.

Dated:  April 12, 2024                                    Respectfully submitted,

                                        By:     **Rachel Wagner Furst___**
                                                Rachel Wagner Furst
                                                 Fla. Bar Number: 45155
                                                John R. Byrne

Fla. Bar Number: 0126294
Frank R. Maderal
Fla. Bar Number: 0041481
Nicole Estrada
Fla. Bar Number: 1017979
Maderal Byrne & Furst PLLC
2800 Ponce de Leon Boulevard, Suite 1100
Coral Gables, Florida 33134
Tel: (305) 520-5690
Email: rachel@maderalbyrne.com
Email: john@maderalbyrne.com
Email: frank@maderalbyrne.com
Email: nicole@maderalbyrne.com
Email: alejandra@maderalbyrne.com

*Counsel for Plaintiffs and the putative classes*