## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CV-21372-MOORE/Elfenbein

**LEXI LEIGH ZARFATI**, *et al.*,

      Plaintiffs,

v.

**ARTSANA USA, INC.**,

      Defendant.

_____/

## ORDER GOVERNING ELECTONICALLY STORED INFORMATION PROTOCOL

      **THIS CAUSE** is before the Court on Plaintiffs Lexi Leigh Zarfati, Michelle Williams, Jordana Morris, Maria Angelica Navas, and Grant West's ("Plaintiffs") Motion for Entry of Order Governing ESI Protocol (the "Motion"), ECF No. [38].   Defendant Artsana USA, Inc. ("Defendant") filed a Response in Opposition to the Motion (the "Response"), ECF No. [42], to which Plaintiffs filed a Reply (the "Reply"), ECF No. [45].   After the Parties fully briefed the Motion, Plaintiffs filed an Unopposed Motion for Status Conference, ECF [49], in an apparent effort to expedite the Court's ruling on the Motion.   Having reviewed the Parties' filings and the relevant law, the Motion, **ECF No. [38]**, is **GRANTED** and Plaintiffs' Motion for Status Conference, **ECF No. [49]**, is **DENIED AS MOOT**.   The Court explains its reasoning below.

      In the Motion, Plaintiffs explain that they "need certain discovery from [Defendant] that will take the form of electronically stored information" ("ESI") to "prevail at the class certification stage and at trial[.]"  ECF No. [38] at 2.  To that end, "Plaintiffs have attempted to negotiate [with Defendant] an ESI protocol that will both efficiently identify relevant custodians, data sources, and search terms to ensure relevant information is produced in a usable format."  *Id.*  Plaintiffs

explain, however, that Defendant "insists on keeping its relevant custodians and data sources to itself (or at least forcing Plaintiffs to try and discover the same through interrogatories and depositions)." *Id.* Plaintiffs argue that "such a process [is] needlessly inefficient, [which] seems [to be] designed to obfuscate and delay the search for relevant information." *Id.*

In the Response, Defendant opposes Plaintiffs' proposed ESI protocol, characterizing it as "highly technical" and one-sided. ECF No. [42] at 1. Defendant explains that it "is a small Pennsylvania-based company" and that the ESI protocol Plaintiffs propose is better suited to "a complex putative class action brought against a Fortune 50 company involving complicated banking and financial information, including detailed provisions about negotiating over appropriate data sources, custodians, and search terms." *Id.* at 2-3. Furthermore, Defendant takes issue with Plaintiffs' proposed ESI protocol because it requires the Parties to "waste time negotiating search terms, which custodians should be searched, and which data sources [Defendant] should collect from." *Id.* at 7.

Finally, in Reply, Plaintiffs argue that Defendant's "proposed ESI protocol appears to purposely hinder the search for potentially damaging documents, mainly by providing zero visibility into — and zero procedures governing — the company's efforts to locate responsive materials." ECF No. [45] at 1. Additionally, Plaintiffs argue that the instant case "is a nationwide class action lawsuit" that requires a "thorough and comprehensive" ESI protocol that accounts for "the significant geographical scope and technical nature of the case[.]" *Id.*

The Court begins its discussion of the issues with Defendant's point that Plaintiffs filed the Motion in contravention of the Court's Order Setting Discovery Procedures, which plainly states that "the parties shall not raise any discovery disputes by filing written discovery motions." ECF No. [6] at 2 (footnote call number omitted). The Parties' dispute over which ESI protocol to

implement is a discovery issue the Court could have resolved more efficiently at a discovery hearing.  However, as the Parties fully briefed the instant Motion, the Court will rule on it in this Order.

Notwithstanding its procedural posture, the Motion is convincing.  Contrary to Defendant's assertions, this is not a run-of-the-mill lawsuit nor is Defendant a mom-and-pop business.  To Defendant's first claim, this is a class-action lawsuit that seeks to represent putative class members throughout the United States, involves consumer-protection claims concerning an allegedly known design defect in the braking mechanism of various stroller models, and seeks over $5,000,000 in damages.  *See* ECF No. [1] at ¶¶ 14, 114-47.  Indeed, recognizing that this is not a standard case, the Parties agreed in their Joint Scheduling Report that this case "is appropriate for a modified *complex* case management track under Local Rule 16.1(a)(2)."  *See* ECF No. [22] at 2 (emphasis added).  Due to the potential large scale of this case, the Court is inclined to implement a thorough ESI protocol that facilitates the full and efficient disclosure of discoverable ESI.  *See Home Design Servs., Inc. v. Turner Heritage Homes, Inc.*, No. 08-CV-355, 2018 WL 4381294, at *8 (N.D. Fla. May 29, 2018) ("The management and retrieval of ESI has now become front and center in most complex litigation cases."), *report and recommendation adopted*, No. 08-CV-355, 2018 WL 6829047 (N.D. Fla. Sept. 28, 2018).  As for Defendant's other point, while it may be true that it only "has 58 employees[,]" ECF No. [42-7] at ¶ 2, the Complaint alleges that Defendant is part of a larger company with a global footprint, selling goods in approximately 120 countries, ECF No. [1] at ¶ 21, meaning it likely possesses voluminous quantities of ESI connected with its business.

Additionally, Defendant's objection — that the ESI protocol Plaintiffs propose is one-sided and, for that reason, should not be entered — is unconvincing.  Although it is true that Plaintiffs' proposed ESI protocol only applies to Defendant, the Motion, Response, and Reply make clear

that Defendants' ESI will be subject to searches and production during discovery, as further explained below.  The same cannot be said of Plaintiffs' document production.  Defendant's Response does not provide the Court with any information about any discovery requests propounded on Plaintiffs that involve the production of extensive ESI or otherwise substantiate the notion that Plaintiffs' ESI will be at issue.  Thus, as the record currently stands, there is no need for an ESI protocol governing Plaintiffs' document production.  With that said, should the discovery landscape change and it becomes clear that Plaintiffs will be required to search for and produce a significant amount of ESI, the Court encourages the Parties to confer with one another to determine whether an ESI protocol relating to Plaintiffs' document production is necessary and whether the instant ESI protocol should be modified accordingly.

Likewise, the Court is not persuaded by Defendant's argument that it essentially has *carte blanche* to decide the manner in which it searches for and gathers discoverable ESI in this case. To support this position, Defendant quotes the Sedona Principles, which state that "[a] producing party is 'best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information.'"  ECF No. [42] at 7 (quoting The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production, 19 Sedona Conf. J. 1, Principle 6, 118 (2018)). However, a producing party's right to set its own protocol for producing ESI is not unconstrained, as the protocol it follows must be reasonable.  *See Nichols v. Noom, Inc.*, 2021 WL 948646, at *2 (S.D.N.Y. Mar. 11, 2021) ("[A] producing party is best situated to determine its own search and collection methods *so long as they are reasonable*." (emphasis added)).  For instance, the court in *Noom* agreed to allow the producing party to proceed with an ESI protocol of its choosing because it showed that the protocol proposed by the opposing party would "substantially increase its costs

CASE NO. 24-CV-21372-MOORE/Elfenbein

and result in a significant number of duplicates in its review population that cannot be culled through deduplication." *Id.* (quotation omitted).  Similarly, in *In re Zantac (Ranitidine) Prods. Liab. Litig.*, No. 20-MD-2924, 2021 WL 5299847, at *4 (S.D. Fla. Nov. 15, 2021), the court approved the class plaintiffs' proposed protocol for searching their own ESI, but only did so after reviewing the protocol and determining that it was consistent with the requirements of Rule 26(g)(1) that a party conduct a "'reasonable inquiry to locate materials responsive to a discovery request.'"  Here, Defendant's proposed ESI protocol does not address *how* it would conduct a reasonable inquiry when searching its materials.

Significantly, "[t]he discovery process, particularly when ESI is involved, is intended to be collaborative." *Equal Emp. Opportunity Comm'n v. M1 5100 Corp.*, No. 19-CV-81320, 2020 WL 3581372, at *3 (S.D. Fla. July 2, 2020) (citing Chief Justice John Roberts, *2015 Year–End Report on the Federal Judiciary,* https://www.supremecourt.gov/publicinfo/year-end/2015year-endreport.pdf.).  Following that principle, this District's Local Rules encourage parties to collaborate with one another at the earliest stages of the case to think about and discuss the impact of ESI on the potential discovery.  *See* S.D. Fla. L.R. 16.1(b)(2)(K)(iii) (requiring the parties to include a "written report outlining the discovery plan and discussing" "when the parties have agreed to use the ESI Checklist available on the Court's website . . . , matters enumerated on the ESI Checklist").  And the District's ESI Checklist contemplates that the parties will informally discuss: (1) "[i]dentification of systems from which discovery will be prioritized (e.g., e-mail, finance, HR systems)"; (2) "[d]escriptions and location of systems in which potentially discoverable information is stored"; (3) "[h]ow potentially discoverable information is stored;" and (4) "[h]ow discoverable information can be collected from systems and media in which it is stored."  *See*   https://www.flsd.uscourts.gov/sites/flsd/files/forms/ESI-Checklist.Rule-16.1.pdf

(last visited Jan. 7, 2025).  Consistent with the foregoing, courts in this District have not just

encouraged but have required parties to confer on matters, such as relevant ESI sources,

custodians, search terms, and a proposed ESI protocol.  *See Equal Emp. Opportunity Comm'n*,

2020 WL 3581372 at *3; *see also Wyndham Vacation Ownership, Inc. v. Totten Franqui Davis &*

*Burk, LLC*, No. 18-81055-CIV, 2019 WL 7905017, at *1 (S.D. Fla. Feb. 19, 2019) ("The parties

shall continue to meet and confer on ESI production issues, including search terms and

custodians."); *In re Altisource Portfolio Sols., S.A. Sec. Litig.*, No. 14-81156-CIV, 2016 WL

6917231, at *2 (S.D. Fla. Nov. 10, 2016) (requiring non-party to provide the lead plaintiff with a

list of search terms and custodians used in connection with the discovery production and allowing

the lead plaintiff to thereafter file a motion to modify the search terms and custodians, if necessary).

Despite this, Defendant seems resistant to sharing with Plaintiff (or the Court) how it intends

preserve, search for, and collect the responsive ESI in the case, leaving the Court unable to assess

the reasonableness of the proposed methods.

　　　Turning to Defendant's proportionality argument, Defendant claims that the ESI protocol

Plaintiffs propose is disproportionate to the needs of the case, but it does very little to substantiate

this claim.  *See* ECF No. [42] at 7.  Instead, Defendant relies on the conclusory assertions that (1)

"[m]ost  of Plaintiffs' requests for production are 'sufficient to show' requests"; (2) "[t]here is no

need to engage in search term and custodian negotiations when material responsive to these

requests can be gathered through a directed ask or collection"; (3) "[m]any other requests are

focused on 'documents,' not 'communications,' and therefore do not require any search of emails"

and (4) "[r]equiring that the parties engage in custodial and search terms negotiations when a

detailed email review is not required for many of these requests is a complete waste of resources

and disproportionate to the needs of the case."  *Id.*  These vague and unsupported assertions

standing alone do not dissuade the Court from entering an ESI protocol that requires the Parties to confer and identify search terms, custodians, and sources to be searched to facilitate the disclosure of discoverable ESI, especially when a review of various outstanding discovery requests reveals that electronic communications are at issue.  Indeed, in response to Plaintiffs' First Request for Production Numbers 5, 6, and 9 and Plaintiffs' Second Request for Production Numbers 1 and 5, Defendant will be required to search for, collect, and produce e-mail communications and other ESI.  *See* ECF No. [42-4], Request No. 5 (agreeing to produce "Documents and Communications regarding . . . the development and testing of the Linked Brake Strollers' braking Mechanism, without regard to time period"); Request No. 6 (agreeing to produce "Documents and Communications regarding or discussing any incidents, problems, complaints, or defects regarding the Linked Brake Strollers' braking mechanism, without regard to time period"); Request No. 9 (agreeing to produce "Documents regarding, and Communications sent to or received from, Plaintiffs"); ECF No. [42-5], Request No. 1 (agreeing to produce "Documents and Communications regarding the review by LauraTwinMom on the albeebaby.com website and regarding the representation that 'This product review was collected by the manufacturer," without regard to time period); and Request No. 5 (agreeing to produce "Documents and Communications regarding the review by 'ana' on the Target.com website, including Documents sufficient to identify the member of the 'Chicco Brand Experts team' who responded to ana's review)[1].  Thus, contrary to Defendant's conclusory assertions, the Court agrees with Plaintiffs that multiple discovery requests in this case will require preservation, searches, and collection of ESI, making a protocol appropriate and proportional to the needs of the case.

---

[1] According to Defendant's discovery responses, these all contain a "to the extent they exist" caveat.  *See generally* ECF Nos. [42-4] and [42-5].

In addition to the Parties' general arguments concerning their competing ESI protocols, Plaintiffs specifically object to Defendant's proposed format for producing discoverable ESI on five fronts. *See* ECF No. [38] at 6. However, Defendant made clear in its Response that only two of those five objections remain unresolved. *See* ECF No. [42] at 9. The objections the Court must resolve are: (1) whether the ESI protocol entered by the Court should allow "email threading" and (2) whether the ESI protocol entered by the Court should include language stating that it is governed in part by Pennsylvania law. *See* ECF No. [38] at 6; ECF No. [42] at 9. The Court sustains both objections.

First, Plaintiffs claim that if the ESI protocol allowed for "email threading," it would be impossible to use "the email fields for discrete searching." ECF No. [38] at 6. Defendant opposes this position, arguing that "[t]hreaded emails are still searchable." ECF No. [42] at 9. Defendant also cites two cases that permitted "email threading," but the Court finds that they provide little support for Defendant's position. The first case Defendant cites is *Rabin v. PricewaterhouseCoopers LLP*, and from that case Defendant relies on the following language: "[w]here multiple emails are part of a single chain or 'thread,' a Party is only required to produce the most inclusive message and need not produce earlier, less inclusive email messages[.]" 2016 WL 5897732, at *1 (N.D. Cal. Oct. 11, 2016). When citing that language from *Rabin*, Defendant leaves out the crucial fact that it takes the quoted language from an agreed ESI protocol. The Court will not rely on language grafted from an agreed ESI protocol to support permittance of "email threading" in the instant case absent factual context that would explain why "email threading" is also appropriate here. The second case Defendant cites is *In re Meta Pixel Healthcare Litig.*, 2023 WL 4361131 (N.D. Cal. June 2, 2023). While *Meta* provides better support for Defendant's position, this case alone is insufficient to sway the Court because, in *Meta*, the court in deciding

to allow "email threading" relied on a consultant's statements that "production of [] metadata is not an industry standard practice  [that] would require significant customized work . . .  and would add time and complexity to the ESI production process[.]"  *Id.* at *1.  Neither Party has sufficiently explained the practice of "email threading" such that the Court could determine whether the findings in *Meta* are relevant to the instant case.  *See generally* ECF No. [38] at 6; ECF No. [42] at 9; ECF No. [45] at 4.  The one thing the Court can discern from the Parties' respective explanations of "email threading" is that it could potentially make the review and discovery of relevant information more difficult.  Mindful that the "Federal Rules of Civil Procedure strongly favor full discovery whenever possible[,]" the Court will not include a practice in its ESI protocol that makes discovery more difficult absent convincing legal support.  *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985) (citing Fed. R. Civ. P. 26 (b)(1)).

Second, Plaintiffs object that Defendant's proposed "Clawback Provision" contains language stating that Pennsylvania law, in part, governs the ESI protocol.  *See* ECF No. [38] at 6.  Defendant, for its part, argues that "[p]arties can stipulate to particular law[.]"  ECF No. [42] at 9.  However, Plaintiffs clearly do not agree to such language and this Court has already entered the Stipulated Protective Order in which it lays out the procedure for the inadvertent production of privileged or work-product protected information (i.e. a claw-back provision).  *See* ECF No. [40] at ¶16.  The Court declines to include a claw-back provision in the ESI protocols that may conflict with a previously entered Order in the case.

With these considerations in mind, a robust ESI protocol appears appropriate.  A robust ESI protocol will aid the parties in identifying discoverable ESI, thus helping the Parties complete discovery in this case by Judge Moore's discovery deadline.  *See* ECF No. [49] at ¶ 5 ("Because discovery in this case closes on April 18, 2025, the Plaintiffs submit that the timing of the Court's

CASE NO. 24-CV-21372-MOORE/Elfenbein

resolution of Plaintiffs' Motion for Entry of ESI Protocol is important to the progress of the case."). Furthermore, a comprehensive ESI protocol will help "each party fulfill[] its discovery obligations without direction from the court or opposing counsel" by setting forth procedures that dispel ambiguities that might otherwise give rise to discovery disputes between the Parties requiring the Court's intervention.  Sedona Principles, 19 Sedona Conf. J. at 118.

As Defendant has not proposed its own alternative protocols for preserving, searching for, and collecting the ESI in the case, the Court will adopt Plaintiff's proposed protocols, with some minor modifications.[2]  Further, the Court notes that the ESI protocol Plaintiffs propose more closely aligns with the objectives of the District's ESI Checklist.  For example, as discussed above, the section titled "Informal Discovery About Location and Types of Systems" of the checklist directs parties to identify "systems from which discovery will be prioritized[.]"  *See* https://www.flsd.uscourts.gov/sites/flsd/files/forms/ESI-Checklist.Rule-16.1.pdf  (last visited Jan. 7, 2025).  And in another section, the checklist urges parties to identify "[s]ources of ESI most likely to contain discoverable information" and "search method(s), including specific words or phrases or other methodology, that will be used to identify discoverable ESI[.]"  *Id.*

For the foreseeable reasons, the Motion, **ECF No. [38]**, is **GRANTED** and Plaintiffs' Motion for Status Conference, **ECF No. [49]**, is **DENIED AS MOOT**.  The ESI protocol the Parties will adhere to in this case is as follows:

**A.      Definitions**

1.      "**And**" and "**or**" shall be construed conjunctively or disjunctively as necessary to make their use inclusive rather than exclusive, e.g., "and" shall be construed to mean "and/or."

---

[2] The Court agrees with Defendant that it is unnecessary for the ESI protocol to require Defendant to state each custodian's last known address, date of birth, and dates of employment.  It is sufficient for Defendant to provide the name and title of each custodian.  The Court has also removed all references to any "stipulation" in the proposed ESI protocols as the Parties did not stipulate to any of its terms.

2.      "**Defendant**" means and refers to the named defendant in the above-captioned matter(s), as well as any later added defendants, as well as their directors, principals, employees, agents, and affiliated companies.

3.      "**Document**" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rules 26 and 34 of the Federal Rules of Civil Procedure. The term "Document" shall include Hard-Copy Documents, Electronic Documents, and ESI as defined herein.

4.      "**Electronic Document or Data**" means Documents or Data existing in electronic form at the time of collection, including but not limited to: e-mail or other means of electronic communications, word processing files (e.g., Microsoft Word), computer presentations (e.g., PowerPoint files), spreadsheets (e.g., Excel), image files (e.g., jpg), and video and voice files.

5.      "**Electronically stored information**" or "**ESI**": Any Document stored or transmitted in electronic form, including, but not limited to, email.

6.      "**Hard-Copy Document**" means Documents existing in paper form at the time of collection.

7.      "**Include**" and "**Including**" shall be construed to mean "include but not be limited to" and "including, but not limited to."

8.      "**Load files**" means electronic files provided with a production set of documents and images used to load that production set into Plaintiffs' document review platform, and correlate its data within that platform.

9.      "**Metadata**" means: (i) structured, i.e., fielded, information embedded in a native file which describes, inter alia, the characteristics, origins, usage, and/or validity of the electronic file; (ii) information generated automatically by the operation of a computer or other information

technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system; (iii) information, such as Bates numbers, created during the course of processing documents or ESI for production; and (iv) information collected during the course of collecting documents or ESI, such as the name of the media device, the custodian, or non-custodial data source from which it was collected, the date, the subject line, and the author and recipient of the document.

10.     "**Media**" means an object or device, real or virtual, including but not limited to a disc, removable storage device, tape, computer, or other device on which data is or was stored.

11.     "**Native Format**" means and refers to the format of ESI in which it was generated and/or as used by the Defendant in the usual course of its business and in its regularly conducted activities. For example, the native format of an Excel workbook is a .xls or .xslx file.

12.     "**Optical Character Recognition**" or "**OCR**" means the process of recognizing and creating a file containing visible text within an image.

13.     "**Searchable Text**" means the native text extracted from an Electronic Document and any Optical Character Recognition text ("**OCR text**") generated from a Hard-Copy Document or electronic image.

14.     Reference to the singular shall also be deemed to refer to the plural and vice-versa.

15.     "**Responsive**," "**Relevant**," and "**Discoverable**" are used interchangeably and each shall be construed to encompasses the broadest possible scope.

16.     "**Tagged Image File Format**" or "**TIFF**":  The CCITT Group IV graphic file format for storing bit-mapped images of ESI.

17.    "**Hash Value**":  The unique numerical identifier assigned to a file, a portion of a file, or a group of files based on a standard mathematical algorithm applied to the characteristics of the text contained within the file or files

## B.    General Agreements

1.    <u>Ongoing Cooperation among the Parties</u>. The parties agree to continue to consult and cooperate reasonably as discovery proceeds. An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner.

2.    <u>Discovery</u>. The discovery standards set forth in Federal Rules of Civil Procedure shall apply to discovery in this action. The Parties agree to cooperate in identifying appropriate discovery.

3.    <u>Scope</u>. This Protocol supplements the Federal Rules of Civil Procedure, the Court's Local Rules, and any other applicable orders or rules.  Nothing in this Protocol is intended to alter or affect any party's rights or obligations under any order by the Court, but shall be construed, wherever possible, as consistent with the Court's orders.  In addition, nothing in this Protocol establishes any agreement as to either the temporal or subject-matter scope of discovery in this case.

## C.    Confidentiality Treatment

1.    The legend affixed to Documents as defined by, and subject to, the terms of the Stipulated Protective Order entered separately in this case.  *See* ECF No. [40].

## D.    Preservation

1.    Defendant represents that it has issued litigation hold notices to those custodians with data and persons or entities responsible for maintenance of non-custodial data, which possibly

contain discoverable information and have established procedures to ensure that those notices have been received, understood, and appropriately acted upon.

2.      All backup, disaster recovery, or archive media which may contain discoverable ESI that is not otherwise available are being preserved.

3.      All processes and procedures which would result in the elimination or transfer to a less accessible medium of any unpreserved data and associated metadata which would otherwise be required to be preserved or produced have been suspended.

4.      **Within twenty-one (21) days** from entry of this Order, or, for a Defendant served after the entry of this Order, **within twenty-one (21) days from entry of an appearance in this litigation**, each Defendant will identify all ESI preservation systems, including back-up, archive, and disaster recovery systems as well as all associated policies, processes and procedures, including those related to the deletion, removal or transfer of data from a system or location.

**E.      Defendant's Document and Data Sources**

1.      **Within twenty-one (21) days** from entry of this Order, or, for a Defendant served after the entry of this Order, **within twenty-one (21) days from entry of an appearance in this litigation**, each Defendant shall identify and describe all non-custodial data sources which possibly contain discoverable information.

2.      Sources of non-custodial documents include, without limitation, databases, file servers, SANs, NASs, email servers, web servers, on line data stores such as Dropbox, Box and Google Drive, on line email systems such as Google Mail, communication or coordination platforms such as Slack, document management systems (DMS), record management systems (RMS), content management systems (CMS), departmental/project/collaborative/shared storage spaces, e-rooms, structured data stores, application data, source code repositories, social media,

source code repositories, and hard copy document repositories. Information that serves to identify or locate such material, such as file inventories, file folders, indices and metadata, are also included in this definition.

3.      **Within twenty-one (21) days** from entry of this Order, or, for a Defendant served after the entry of this Order, **within twenty-one (21) days from entry of an appearance in this litigati**on, the Defendant shall identify the names, titles and roles of all custodians, currently employed and formally employed, who possibly have discoverable information.

4.      Sources of custodial documents and ESI include, without limitation, network drives, local hard drives, network home or personal file shares, removable storage, email, on-line data storage or online backup services such as Dropbox or Google Drive, messaging applications, phones, tablets, social media, and physical files.

5.      Plaintiffs may identify additional custodial or non-custodial data sources for inclusion under this order. Plaintiffs reserve the right to request, at any time prior to the close of discovery, inclusion of additional custodians or non-custodial data sources whose relevance was discovered after the initial Defendant and Plaintiffs designations, or for other good cause shown. If the Defendant objects to the inclusion of such non-custodial or custodial sources, the Parties will meet and confer to resolve the matter. If the Parties cannot reach resolution, the Court or its designee will determine the matter.

6.      Documents and ESI from identified custodial and non-custodial data sources will be preserved pending identification of data to be produced into this litigation.

7.      Defendant has a continuing obligation to identify any other custodial and non-custodial data sources that may contain information relevant to this litigation and preserve them.

8.   <u>Disputes Concerning Preservation and Collection</u>. If there is a reasonable dispute concerning the scope of a party's preservation or collection efforts, before discovery about such efforts is initiated, the parties or their counsel shall meet and confer.

9.   <u>Potentially Non-Discoverable ESI</u>. Absent a Party's specific written notice for good cause, the following categories of ESI are presumed to be not reasonably accessible and not discoverable:

a.   Backup data files that are maintained in the normal course of business for purposes of disaster recovery, including (but not limited to) backup tapes, disks, SAN, and other forms of media, but only to the extent that such data is duplicative of data more accessible elsewhere;

b.   Deleted, "slack," fragmented, or unallocated data only accessible by forensics;

c.   Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

d.   On-line access data such as (without limitation) temporary internet files, history files, cache files, and cookies;

e.   Data in metadata fields frequently updated automatically, such as last-opened or last-printed dates;

f.   Electronic data (e.g., call logs, email, calendars, contact data, notes, etc.) sent to or from mobile devices (e.g., iPhone, iPad, Android, and Blackberry devices saved and discoverable elsewhere (such as, by way of example only, on a server, backup, laptop, desktop computer, or "cloud" storage);

g.      Voicemail, including Telephone, VOIP voice, messages, on mobile devices such as cell phones, if otherwise stored in discoverable form, such as email, hard drives, servers, or, on server-based voicemail and if the voicemail is marked not to be deleted or is saved in any type of media or are attachments to emails;

h.      Text messages and instant messages not retained in the ordinary course of business, unless saved in any type of media or as attachments to emails;

i.      Server, system, network, or software application logs;

j.      As to potentially relevant data remaining from systems no longer in use that is unintelligible and/or unusable on the systems in use, the parties will meet and confer as to the type of systems no longer in use, software available that can read the data, data export potential, the data that is available, including the date range and type of data, type of information, and other relevant topics;

k.      Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved, by way of example only, as part of a laboratory report, part of or a report relating to statistical analysis or required to be maintained by any government or agency of any government;

l.      Structural files not material to individual file contents (e.g. .CSS, .XSL,.DTD,.) unless such files contain substantive data (for example, when used for data storage or transmission);

m.      Operating System files that do not store substantive content (e.g. CAT, DLL, DMP, EXE, FON, PNF, OPS, SYS);

n.      Application source code, configuration, and other similar files necessary for the function of an application that do not store user-created content during ordinary use

CASE NO. 24-CV-21372-MOORE/Elfenbein

(e.g. BAK, BIN, CFG, DBF, DAT, JS, , JAR, LUA, MSB, RES, WINNT, YTR,), and are not user-created programs (for example SAS programs).

10.     <u>Designation of Discovery Requests</u>. Productions of hard copy documents and ESI in the reasonably usable form set out in this protocol, including Attachment A, shall be cross-referenced by Bates Number(s) as to the categories in the requests to which they are responsive as required by the Federal Rules of Civil Procedure.

11.     <u>Redactions</u>. No redactions for relevance may be made within a produced document, data, or ESI item. For redacted items, all agreed-upon metadata fields will be provided and will include all non-redacted data. Redacted documents and data shall be identified as such in the load file provided with the production. A document's status as redacted does not relieve the Defendant from providing all of the metadata required as agreed upon by the Parties. Any redactions shall be clearly indicated on the face of the document, with each redacted portion of the document stating that it has been redacted and the basis for the redaction, and a metadata field shall indicate that the document contains redactions and the basis for the redaction (e.g., "A/C Privilege"). Where a responsive document contains both redacted and non-redacted content, Defendant shall produce the remainder of the non-redacted portions of the document and the text corresponding to the non-redacted portions in native format and Tiff images.

**F.     Electronically Stored Information.**

1.     <u>Production in Reasonably Usable Form</u>.

a.     Defendant shall produce electronically stored information in a reasonably usable form as set forth in Attachment A.

b.     All documents that contain color and are produced as images will be produced in color.

c.      If electronically stored information discoverable in this proceeding was previously produced in another legal proceeding. Defendant may elect to produce that information in the form in which it was previously produced. However, if the production does not conform with this Order, the Plaintiffs will not be deemed to have received such data in satisfaction of any of their demand.

2.      Enterprise Databases, Database Management Systems, Aggregated Data Sources and Other Structured Data ("Structured Data Systems").

a.      The parties will meet and confer to address what structured data systems the Defendant has which contain potentially relevant documents and/or data. The parties will meet and confer to discuss the documents and data potentially contained therein, the production and production format of discoverable documents and data contained in structured data systems, and/or applications that contain or can access structured or aggregated data.

b.      After assessing the information obtained concerning F(2)(a) above:

(1)      if discoverable data from any Structured Data System can be produced in an already existing report, the Defendant may collect and produce the data in that report format. Neither the production of, nor Plaintiffs' acceptance of, such reports will waive Plaintiffs' rights to obtain the data in such reports in a more usable or comprehensive format (including native format), nor be used by Defendant as a factor to oppose Plaintiffs seeking the data in such reports in a more usable or comprehensive format (including native format);

(2)      if an existing report form is not reasonably available, Defendant may make reasonable efforts to export from the Structured Data System

discoverable information, including audit trails, settings info, data exclusion settings, and other relevant related information, in a format compatible with Microsoft Excel or Microsoft Access and may produce such information in that format. Neither the production of, nor Plaintiffs' acceptance of, such reports will waive Plaintiffs' rights to obtain the information in such reports in a more usable or comprehensive format (including native format), nor be used by Defendant as a factor to oppose Plaintiffs seeking the information in such reports in a more usable or comprehensive format (including native format).

3.     <u>Known Responsive Materials Must Be Produced</u>. Documents and ESI known to the Defendant to responsive to a discovery request and/or relevant to the litigation shall be produced without regard to whether it was responsive to a search term, of high "relevance" by a TAR text classification algorithm, otherwise flagged as potentially responsive by another search technique, or otherwise identified unless Counsel specifically identifies the documents on the Privilege Log as being withheld pursuant to a specific permitted objection under the Protective Order.

4.     <u>Discrete Document Collections</u>. Identified discrete document collections, by way of example and without limitation, include: substantially relevant folders of ESI segregated by Defendant or Defendant's employees, before or after the commencement of this litigation; documents submitted to and exchanged with domestic or foreign regulatory agencies or government entities such as the Consumer Product Safety Commission or the Federal Trade Commission; documents collected as part of expedited reporting and any post-market safety reports that must be submitted; documents required to be maintained by the U.S. Government or any agency therein as well as any foreign government or agency. Discrete Document Collections, shall not be reviewed for responsiveness or privilege and shall be produced in their entirety without

CASE NO. 24-CV-21372-MOORE/Elfenbein

regard to whether each document in the collection contains a search term or is classified of high "relevance" by a TAR text classification algorithm or otherwise is identified as potentially responsive by another search technique, unless Counsel specifically identifies the documents on the Privilege Log as being withheld pursuant to a specific permitted objection pursuant to the Stipulated Protective Order.

5.     <u>Documents with Insufficient Text</u>. Documents that are reasonably believed to be responsive and for which text-based search technologies are fundamentally ineffective, such as images, spreadsheets, etc., must be reviewed without culling by search terms, TAR, or other technologies that rely primarily on text.

6.     <u>Mobile and Handheld Device Documents and Data</u>. If responsive data that can reasonably be extracted and produced in the formats described herein is identified on a mobile or handheld device, that data shall be produced in accordance with the generic provisions of this protocol. To the extent that responsive data identified on a mobile or handheld device is not susceptible to normal production protocols, the Parties will meet and confer to address the identification, production, and production format of any responsive documents and data contained on any mobile or handheld device. Pending such meet and confer and agreement, all such data will be preserved.

7.     <u>Additional or Alternate Methodologies for Documents from Certain Custodians and Non-Custodial Data Sources</u>. Upon request, the Parties will meet and confer to address the need for and implementation of additional or alternate methodologies for identifying possibly responsive documents from custodians and non-custodial data sources that may warrant such treatment.

CASE NO. 24-CV-21372-MOORE/Elfenbein

8.      <u>Use of Other Filtering or Culling Technology or Methodology</u>. Prior to use or further use by Defendant other than those specified within this Protocol, the Parties must meet an confer to disclose and discuss any other proposed or use of technologies not as specified herein to identify or reduce the sources or number of potentially responsive documents identified for classification, or to be reviewed and/or produced (including but not limited to file type culling, email thread suppression, keyword or Boolean searching, de-duplication, filtering, clustering, or concept searching). Use of such technologies to reduce the reviewable collection, production, or volume of materials to be collected or reviewed, other than as described within this protocol, requires the consent of the opposing party and will be subject to a separate mutually agreeable protocol for the use of such technologies to be negotiated by the Parties. The Defendant will also timely disclose any prior use of such filtering or culling.

9.      <u>Identification, Search and Filtering of ESI and Documents</u>.

a.      The parties will meet and confer for the purposes of identifying all sources of relevant documents and ESI for collection, review, and production, including but limited to the use of technology, technology assisted review, predictive coding, keywords and phrases, and other possible technology to reduce the volume size of the collection being considered for production. In any such discussion,

(1) If, after the Defendant has first disclosed the proposed technology and methodology to be used to reduce the volume size of the documents and ESI being considered for collection, review or production, any other party believes in good faith that use of the disclosed technology and methodology could result in deficiencies in production, the Parties will work collaboratively on any revisions to

such technology and methodology. Any proposed technology and methodology shall be tailored to particular claims and defenses.

(2) Nothing in this section shall limit a Party's right reasonably to seek agreement from the other Party or a court ruling to modify previously agreed-upon uses of technologies and methodologies for the identification, search, and filtering of ESI and documents.

10.    <u>Email Threading</u>. No email may be withheld because it is included in whole or in part in a more inclusive email.

11.    <u>Avoidance of Duplicate Production</u>

a.    "Duplicate ESI" means files that are exact duplicates based on the files' MD5 or SHA-1 hash values. The Defendant need produce only a single copy of responsive Duplicate ESI. A Defendant shall take reasonable steps to de-duplicate ESI globally (i.e., both within a particular custodian's files, across all custodians and non-custodial sources). Entire document families may constitute Duplicate ESI. De-duplication shall not break apart families; document families shall be de-duplicated only against other document families. Standalone documents shall only be de-duplicated against standalone documents. When the same Duplicate ESI exists in the files of multiple custodians, each custodian shall be individually listed in the OTHER_CUSTODIANS field identified in Paragraph A.14(c) of Attachment A.

b.    Defendant shall disclose the details of their methodology used or to be used to calculate the hash values of emails and email families.

c.    The original file paths of each duplicate document prior to de-duplication shall be populated in a metadata field called OTHER_FILEPATHS.

      d.      The original filenames of each duplicate document prior to de-duplication shall be populated in a metadata field called OTHER_FILENAMES.

      e.      If the Defendant makes supplemental productions following an initial production, that Party also shall provide with each supplemental production an overlay file to allow the Plaintiffs to update the OTHER_CUSTODIANS, OTHER_FILEPATHS, and OTHER_FILENAMES fields. The overlay file shall include both all custodians, filepaths and file names listed in the OTHER_CUSTODIANS, OTHER FILEPATHS and OTHER FILENAMES fields in prior productions, and any custodians, filepaths and file name newly identified in the current supplemental production.

**G.**      **Information Not Addressed in This Order**

To expedite discovery of relevant evidence, the parties will discuss and attempt in good faith to resolve all issues involving information not addressed in this Order before bringing to these issues to the Court.

**H.**      **No Waiver**

By complying with this Order, Defendant waives no objection to the production of the documents, tangible items or things and ESI that is preserved, except to the extent the parties have agreed to the production or the court orders otherwise.

**I.**      **Stipulated Protective Order**

The terms of the Stipulated Protective Order governing inadvertent production of privileged information of ESI is subject to the Parties' rights under the Stipulated Protective Order, ECF No. [40], the practices of the Court, and the rules to request the return of inadvertently produced documents.

CASE NO. 24-CV-21372-MOORE/Elfenbein

**DONE and ORDERED** in Chambers in Miami, Florida on January 7, 2025.

_____
**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc:  All Counsel of Record

Attachment A

A.    Format and Processing Specifications for Defendant's Productions

A.1.   Native Files. Any document produced in native file format shall be given a file name consisting of a unique Bates number and, as applicable, a confidentiality designation; for example, "ABC00000002_Confidential." For each native file produced, the production will include also be produced as Tiffs, indicating the production number of the native file and the confidentiality designation and stating "File Provided Natively" on the Tiff. The original document text shall be provided in a document-level UTF-8 with BOM text file with a text path provided in the *.dat file; otherwise the text contained in the Tiff shall be provided in the *.txt file with the text path provided in the *.dat file. Native files will be produced in a separate folder on the production media. Where redaction makes production of native-format files infeasible, the Parties will confer to determine if there is a reasonable method to produce the file as a redacted native.

       a.    Spreadsheets. All spreadsheets (e.g., Microsoft Excel) files shall be produced as native files with TIFF placeholder images. Spreadsheet files requiring redaction, including Microsoft Excel files, will be redacted within the native file and the redacted native file will be produced as provided herein with TIFF placeholder images. If spreadsheet files are produced as images, such images will display all content and data visible in any view in the native application.

       b.    Word Processing, Presentation, Image & PDFs. All word processing (e.g., Microsoft Word), presentation (e.g., Microsoft PowerPoint), image (e.g., .jpg, .gif), and PDF files shall be produced as native files with TIFF images. If redactions are required, the files may be produced as redacted TIFFs or as native files with TIFF placeholder images. If these file-types are produced as images, such images will display all content and data visible in any view in the native application.

       c.      <u>Media Files</u>. All media files, such as audio and video files and digital photographs, shall be produced as native files with TIFF placeholder images.

       d.      <u>Digital Photos</u>. Where reasonably possible, all digital photographs will be produced as full color image files in their native file format at their original resolution.

       e.      <u>Emails</u>. Emails shall be produced as TIFF images with extracted text and the metadata as the parties have agreed.

       f.      <u>Less-Commonly Used File Types</u>. The Parties will meet and confer on the production format of less-commonly used file types.

A.2. Hard Copy documents, will be scanned to TIFF image format. In scanning, documents are to be produced as they were kept. For documents found in folders or other containers with labels, tabs, indexes or other identifying information, such indexes, labels, and tabs shall be scanned. Pages with Post-It notes shall be scanned both with and without the Post-it, with the image of the page with the Post-it preceding the image of the page without the Post-It. Defendant will use best efforts to unitize documents (*i.e.*, distinct documents should not be merged into a single record, and a single document should not be split into multiple records) and maintain document relationship (i.e., attachment status). Original document orientation (*i.e.*, portrait v. landscape) should be maintained. Defendant's hard copy documents that are not text-searchable shall be made searchable by OCR prior to production. OCR software must be set to the highest quality setting for any previously-unscanned paper documents and reasonable quality control measures shall be used to ensure that the integrity of scanned copies of previously unscanned paper documents are preserved for OCR (*e.g.*, pages are not angled or skewed, text is not blurred or obscured, etc.). Documents containing foreign language text must be OCR'd using the appropriate settings for that language (*e.g.*, OCR of German documents must use settings that properly capture umlauts).

Settings such as "auto-deskewing" and "auto-rotation" must be turned on during the OCR process to maximize text recognition on any given page.

A.3. <u>Image ("TIFF") Files</u>. Files produced in *.tif format will be single page black and white (or color in accordance with section F.1.(b)) *.tif images at 300 DPI, Group IV compression. To the extent possible, original orientation will be maintained (i.e., portrait-to-portrait and landscape- to- landscape). Image file names will be identical to the corresponding bates numbered images, with a ".tif" file extension. Such files will be grouped in folders of no more than 1,000 *.tif files each unless necessary to prevent a file from splitting across folders. If a file, *e.g.*, a PDF file, exceeds 500 *.tif images, the Defendant may produce the file natively rather than in *.tif format. Files will not be split across folders and separate folders will not be created for each file. Production ("Bates") numbers shall be endorsed on the lower right corner of all images. This number shall be a unique, consistently formatted identifier that will:

> (i) be consistent across the production;

> (ii) contain no special characters or spaces; and

> (iii) be numerically sequential within a given file.

Bates numbers should be a combination of an alpha prefix along with an 8-digit number (e.g. ABC00000001). The number of digits in the numeric portion of the Bates number format should not change in subsequent productions. All images of documents which contain comments, deletions, Post-Its, and/or revision marks (including the identity of the person making the deletion or revision and the date and time thereof), speaker notes or other user-entered data that the source application can display to the user, will be processed such that all that data is visible in the image.

A.4. <u>Confidentiality</u>. The confidentiality treatment level for any item will be provided with the created data for that item in the field entitled "CONFIDENTIALITY TREATMENT." For items

with no confidentiality requirements, the field will be left blank. Defendant will brand any confidentiality endorsements in a corner of any TIFF images representing the produced item. Those endorsements must be in a consistent font type and size and must not obscure any part of the underlying image or Bates number.

A.5. <u>File Text</u>. Except where a file's full text cannot be extracted (*e.g.*, when a file has been redacted under assertion of privilege or other protection from disclosure), full text will be provided in the format of a single *.txt file for each file (*i.e.*, not one *.txt file per *.tif image). Where ESI contains text that cannot be extracted, the available *.tif image will be OCR'd or, if available, the redacted native file will have its text re-extracted, and file-level text will be provided. Extracted text is always preferred and should be produced where possible. Extracted text shall include all comments, revisions, tracked changes, redlines, speakers' notes, and text from documents with comments or tracked changes and all hidden and very hidden data, worksheets, slides, columns, and rows. Text extracted from emails shall include all header information that would be visible if the email was viewed in Outlook including: (1) the individuals to whom the communication was directed ("To"), (2) the author of the email communication ("From"), (3) who was copied and blind copied on such email ("CC" and "BCC"), (4) the subject line of the email ("RE" or "Subject"), (5) the date and time of the email, and (6) the names of any attachments. The extracted full text and/or OCR text shall be provided in separate, document level, UTF-8 with BOM encoded TXT files provided in a separate folder. The number of TXT files per folder should be limited to 1,000 files. The full path of the text file must be provided in the *.dat data load file.

A.6. <u>Parent-Child Relationships</u>. Parent-child relationships (*e.g.*, the associations between emails and their attachments) will be preserved. Email and other ESI attachments will be produced as

independent files immediately following the parent email or ESI record. Parent-child relationships will be identified in the data load file pursuant to paragraph A.14 below.

A.7. <u>Date Fields Time Zone</u>. All documents shall be processed so as to show fielded dates and times in the Eastern time zone.

A.8. <u>Family Groups</u>. A document and all other documents in its attachment range and emails with attachments and files with extracted embedded OLE documents all constitute family groups. If any member of a family group is produced, all members of that group must be also be produced or else logged as privileged, and no such member shall be withheld from production as a duplicate.

A.9. <u>Dynamic Fields</u>. Files containing dynamic fields such as file names, dates, and times will be produced showing the field type (e.g., "[FILENAME]" or "[AUTODATE]"), rather than the values for such fields existing at the time the file is processed.

A.10. <u>Embedded Objects</u>. OLE embedded objects (embedded MS Office files, etc.), except for images embedded in emails, shall be extracted as separate files and treated as attachments to the parent document. Images embedded in emails shall not be produced separately. However, in the case of emails, if the embedded objects are images contained in a signature block, the embedded image file shall not be produced as a separate file, Embedded files should be assigned Bates numbers that directly follow the Bates numbers on the documents within which they are embedded.

A.11. <u>Foreign Languages</u>. To the extent any data exists in more than one language, the data will be produced in all such languages. All existing translations of non-English documents to English will be produced, subject to claims of attorney-client privilege or work-product. If no English version of a file is available, the Defendant shall not have an obligation to produce an English translation of the data. Documents containing foreign language text must be produced with the extracted full text and if not possible, OCR text in separate, document level, UTF-8 with BOM

encoded TXT files provided in a separate folder. OCR technology must use the appropriate settings for that language, (*e.g.*, OCR of German documents must use settings that properly capture umlauts).

A.12. <u>Compressed Files</u>. Compressed file types (i.e., .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files.

A.13. <u>Production Numbers</u>. Defendant shall take reasonable steps to ensure that attachments to documents or electronic files are assigned production numbers that directly follow the production numbers on the documents or files to which they were attached. If a production number or set of production numbers is skipped, the skipped number or set of numbers will be noted. In addition, wherever possible, each *.tif image will have its assigned production number electronically "burned" onto the image.

A.14. <u>Data and Image Load Files</u>.

      a.     <u>Load Files Required</u>. Unless otherwise agreed, each production will include a data load file in Concordance (*.dat) format and an image load file in Opticon (*.opt) format.

      b.     <u>Load File Formats</u>.

      i.     Load file names should contain the volume name of the production media. Additional descriptive information may be provided after the volume name. For example, both ABC001.dat or ABC001_metadata.dat would be acceptable.

      ii.     Unless other delimiters are specified, any fielded data provided in a load file should use Concordance default delimiters. Semicolon (;) should be used as multi-entry separator.

iii.     Any delimited text file containing fielded data should contain in the first line a list of the fields provided in the order in which they are organized in the file.

c.      Fields to be Included in Data Load File. For all documents or electronic files identified as responsive and not privileged, the following metadata fields for each document or electronic file, if available at the time of collection and unless such metadata fields are protected from disclosure by attorney-client privilege or work-product privilege and appropriately placed on the Privilege Log with required data or otherwise prohibited from disclosure by the terms in the Protective Order, will be provided in the data load file pursuant to subparagraph (a). The term "Scanned Docs" refers to documents that are in hard copy form at the time of collection and have been scanned into *.tif images. The term "Email and E-Docs" refers to files that are in electronic form at the time of their collection, irrespective of the form (TIFF-Plus or native format) in which they are produced. **[TABLE APPENDED AT END OF ATTACHMENT]**.

A.15. <u>Miscellaneous Provisions</u>

a.      <u>Exception Files</u>. The Parties will use reasonable efforts and standard industry practices to address Documents that present imaging or form production problems (including encrypted and/or protected files identified during the processing of ESI) ("Exception Files").  The Parties will meet and confer regarding procedures that will be used to identify, access and process Exception Files. If the Parties cannot reach agreement on the handling of Exception Files through the meet and confer process, the matter may be submitted to the Court for determination.

b.      <u>De-NISTing</u>. Electronic files will be De-NISTed, removing commercially available operating system and application file information contained on the current NIST file list.

c.      <u>Lost, Destroyed or Irretrievable ESI</u>. If a Defendant learns that responsive ESI that once existed was lost, destroyed, or is no longer retrievable as a result of acts or circumstances not

occurring in the ordinary course of business, the Defendant shall timely comply with its obligations under the Federal Rules of Civil Procedure to explain where and when the responsive ESI was last retrievable in its original format and to disclose the circumstances surrounding the change in status of that responsive ESI, whether that information is available from other sources and whether any backup or copy of such original responsive ESI exists. Nothing in this paragraph is intended to expand or limit the obligations under the Federal Rules of Civil Procedure.

d. <u>Encrypted or Password-Protected ESI</u>. For any ESI that is produced in encrypted format or is password-protected, the Defendant will provide the propounding party a means to gain access to those native files (for example, by supplying passwords.)

e. <u>Encryption</u>. To maximize the security of information in transit, any media or file sharing electronic document repository on which documents are produced must be encrypted by Defendant. Production deliverables provided via File Transfer Protocol ("FTP") shall be made available on a secured FTP connection with AES 256-bit encryption. All production volumes uploaded by Defendant via this file sharing document repository shall remain available for download for **no less than thirty (30) calendar days**. In such cases, the Defendant shall transmit the encryption key or password to a requesting Party, under separate cover, contemporaneously with sending the encrypted media, or correspondence indicating the availability of the encrypted FTP deliverables.

f. <u>Production Media</u>. The Defendant will use the appropriate electronic media (CD, DVD or hard drive) or secure electronic transfer for its ESI production, and, if physical media is being provided, will cooperate in good faith to use the highest-capacity available media to minimize associated overhead. The Defendant will label the physical media with the applicable Defendant, production date, media volume name, and document number range. Any replacement

Production Media will cross-reference the original Production Media, clearly identify that it is a replacement and cross-reference the Bates Number range that is being replaced.

A.16. <u>General Rights and Obligations</u>

a.     <u>Impact of Order on Other Obligations</u>. Nothing in this agreement shall affect the preservation requirements set forth in previous orders, subsequent orders, or any other preservation obligations of the Parties for these proceedings or for other purposes, such as pursuant to court order, administrative order, statute, or in response to other anticipated litigation. By preserving documents or ESI for the purpose of this litigation, the Defendant is not conceding that such material is discoverable nor are they waiving any claim of privilege.

b.     <u>Continuing Obligations</u>. The Parties will continue to meet and confer regarding any issues as necessary and appropriate, including agreeing to modify any of the dates and periods set forth in this Order. This Protocol does not address or resolve any objections to the scope of the Parties' respective discovery requests.

c.     <u>Document Storage</u>. During the pendency of this litigation, the Defendant shall make reasonable efforts to preserve the originals of all hard copy and ESI documents produced to the Plaintiffs and to preserve the original native format version of any ESI produced in non-native format.

d.     <u>Good Faith Compliance and Conferral Obligation</u>. The Parties shall make good faith efforts to comply with and resolve any differences concerning compliance with this Order. No Party may seek relief from the Court concerning compliance with this Order unless it has first conferred with the other Parties. The Parties shall reasonably cooperate in the exchange of information concerning data systems and ESI as may be necessary to facilitate the discovery and

exchange of ESI in these proceedings and to further the exchange of information commenced at the Parties' Rule 26(f) Conference.

e.   <u>Proprietary Software</u>. To the extent that relevant ESI cannot be rendered or reviewed without the use of proprietary software, the parties shall meet and confer **within 30 days** of the parties reaching agreement to this order to minimize any expense or burden associated with the production of such documents in an acceptable format, including issues as may arise with respect to obtaining access to any such software and operating manuals.

f.   <u>Alternate Formats</u>. Upon reasonable request made by the Plaintiff, the Parties shall confer regarding the production in an alternate format of a document previously produced in accordance with this order.

g.   <u>Third-Party Data</u>. The Parties will meet and confer before serving any subpoenas in this matter on commercial e-mail providers, such as Google or Yahoo, or any social media companies, such as Facebook or Twitter.

h.   <u>Subpoenas and FOIA Requests</u>. If an Issuing Party issues a non-party subpoena or a FOIA request after the date of this Order, the Issuing Party shall include a copy of this Order with the subpoena and request that third parties produce data and documents in accordance with the production specifications set forth in this Order. Nothing in this Order is intended or should be interpreted as narrowing, expanding, or otherwise affecting the rights of third parties to object to a subpoena. The Issuing Party is responsible for producing any documents obtained pursuant to a subpoena or FOIA request to the other Party **within fourteen (14) days** of receipt of those documents. If the non-party production is not Bates-stamped, the Issuing Party will apply unique prefixes for the non-party production and Bates numbers prior to producing them to the other Party.

**Table Reference in Paragraph A.14(c)**:

| Field | Sample Data | Scanned Docs | Email and E-Docs | Comment |
|---|---|---|---|---|
| PRODBEG [Key Value] | ABC00000001 | Yes | Yes | Beginning production number |
| PRODEND | ABC00000008 | Yes | Yes | Ending production number |
| PRODBEGATT | ABC00000009 | Yes | Yes | Beginning production number of parent in a family |
| PRODENDATT | ABC00001005 | Yes | Yes | Ending production number of last page of the last attachment in a family |
| CUSTODIAN | Smith, John | Yes | Yes | Custodian who possessed the document or electronic file |
| OTHER_CUSTODIANS | Doe, Jane; Jones, James | N/A | Yes | When global de-duplication is used, these are custodians whose file has been de-duplicated; multiple custodians separated by semicolons |
| NATIVEFILE | Natives\001\001\ABC00000001.xls | N/A | Yes | Path and file name for native file on production media |
| FILEDESC | Microsoft Office 2007 Document | N/A | Yes | Description of the type file for the produced record. |
| FOLDER | \My Documents\Document1.doc | N/A | Yes | Original source folder for the record produced. |
| FILENAME | Document1.doc | N/A | Yes | Name of original electronic file as collected. |
| DOCEXT | DOC | N/A | Yes | File extension for email or e-doc |

| Field | Sample Data | Scanned Docs | Email and E-Docs | Comment |
|---|---|---|---|---|
| PAGES | 2 | Yes | Yes | Number of pages in the produced document or electronic file (not applicable to native file productions). |
| AUTHOR | John Smith | N/A | Yes | Author information as derived from the properties of the document. |
| DATECREATED | 10/09/2005 | N/A | Yes | Date on which non-email file was created as extracted from file system metadata |
| DATELASTMOD | 10/09/2005 | N/A | Yes | Last date on which non-email file was modified as extracted from file system metadata |
| SUBJECT | Changes to Access Database | N/A | Yes | "Subject" field extracted from email message or metadata properties of the document |
| FROM | John Beech | N/A | Yes | "From" field extracted from email message |
| TO | Janice Birch | N/A | Yes | "To" field extracted from email message |
| CC | Frank Maple | N/A | Yes | "Cc" or "carbon copy" field extracted from email message |
| BCC | John Oakwood | N/A | Yes | "Bcc" or "blind carbon copy" field extracted from email message |
| DATESENT | 10/10/2005 | N/A | Yes | Sent date of email message (mm/dd/yyyy format) |
| TIMESENT | 10:33 am | N/A | Yes | Sent time of email message, time zone set to GMT |
| DATERCVD | 10/10/2005 | N/A | Yes | Received date of email message (mm/dd/yyyy format) |

| Field | Sample Data | Scanned Docs | Email and E-Docs | Comment |
|---|---|---|---|---|
| TIMERCVD | 10:33 am | N/A | Yes | Received time of email message, time zone set to GMT |
| ALL_PARTICIPANTS | John Beech, Janice Birch, Frank Maple | N/A | Yes | For emails only; lists all participants in lesser-included emails that, without email threading, would have been subject to review |
| CONFIDENTIALITY | HIGHLY CONFIDENTIAL | Yes | Yes | Text of confidentiality designation, if any |
| TEXTPATH | Text\001\001\ABC00000001.txt | Yes | Yes | Path to *.txt file containing extracted or OCR text |
| FILE_PRODUCED_IN_NATIVE_AND_TIFF | Yes | N/A | YES | Limited to documents reproduced in native format |
| MD5_HASH | 309997447f...... | N/A | Yes | MD5 Hash value for ESI |
| PRODVOL | VOL001 | Yes | Yes | Name of the Production Volume |
| Hard Copy | Y/N | YES | N/A | |
| OTHER FILEPATHS | \My Documents\Document1.doc | N/A | YES | Folder/filepath information for deduplicated copies |
| OTHER FILENAMES | Document1.doc | N/A | YES | File name information for deduplicated copies |
| DUPELOCATIONS | \My Documents\Document1.doc; \Desktop\Document1.doc | N/A | Yes | Filepaths including filenames of all duplicates |
| ATTACHMENT COUNT | 1 | N/A | Yes | Number of documents attached to a document |
| ATTACHMENT NAMES | | N/A | Yes | File Name of all attachments |
| LASTMODIFIED BY | John Smith | N/A | Yes | Last user to modify document |

| Field | Sample Data | Scanned Docs | Email and E-Docs | Comment |
|---|---|---|---|---|
| REDACTED | Y/N | Yes | Yes | Identifies documents with redactions |
| REDACTION REASON | | Yes | Yes | Identifies the type of redaction |
| CONVERSATIONID | | N/A | Yes | |
| HASREVISIONS | | N/A | Yes | |
| HASCOMMENTS | | N/A | Yes | |
| HASHIDDENTEXT | | N/A | Yes | |
| HASHIDDENSLIDES | | N/A | Yes | |
| HASSPEAKERNOTES | | N/A | Yes | |
| HASHIDDENROWS | | N/A | Yes | |
| HASHIDDENCOLUMNS | | N/A | Yes | |
| HASHIDDENWORKSHEETS | | N/A | Yes | |
| HASVERYHIDDENWORKSHEETS | | N/A | Yes | |